**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **DENCIL PERRY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:05CV1384-DJS |
| | ) | |
| **MISSOURI DEPARTMENT OF** | ) | |
| **CORRECTIONS, LAURA ELLISON,** | ) | |
| **MARY THIBODEAUX, TROY STEELE,** | ) | |
| **STEVE JENNINGS, ROBERT WALLACE,** | ) | |
| **JAMES F. LABUNDY, and WAYNE CRUMP,** | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ORDER**</u>

Pro se plaintiff, an inmate housed at Northeast Correctional Center, brings the instant action pursuant to Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act against defendant Missouri Department of Corrections ("MDOC").[1] Plaintiff alleges in his first amended complaint that defendant MDOC denied him access and participation in the Missouri Sex Offender Program ("MOSOP") administered by defendant MDOC because of plaintiff's learning disability and illiteracy in violation of the ADA (Count I) and the Rehabilitation Act (Count II). Defendant MDOC asserts that plaintiff's claims fail because he was terminated from MOSOP for his refusal to

---

[1] The MDOC is the only remaining defendant in the instant action.

participate openly and honestly in the program and because defendant MDOC qualifies for Eleventh Amendment immunity.

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the nonmoving party must go beyond the pleadings and set forth specific facts sufficient to raise a genuine issue for trial. Id. at 324. Upon careful consideration, the Court will grant defendant MDOC's motion for summary judgment, to which plaintiff has not responded.[2]

---

[2] Although plaintiff asserts he is illiterate, his filings to date have been well written and comprehensible. Plaintiff has indicated that another inmate, who aided him in his previous filings, is no longer available to help plaintiff respond to defendant MDOC's motion. The Court denied plaintiff's motion for appointment of counsel, but granted an extension of time to respond until January 29, 2007, after plaintiff indicated that he would attempt to find another way to respond to the motion. To date, plaintiff has not filed anything with the Court indicating he was or was not able to find an alternate means to respond to the motion before the Court.

## **Background**

In deciding the motion, the Court has viewed the facts in the light most favorable to the nonmovant. Plaintiff is an inmate incarcerated with defendant MDOC, and has been serving a nine-year term of incarceration for the crime of statutory rape since 1999. Plaintiff has been diagnosed as having a learning disability by the MDOC and cannot read or write. Plaintiff was originally scheduled for a conditional parole release on September 24, 2004, subject to a number of special conditions--one of which was the successful completion of MOSOP. Plaintiff began participation in MOSOP on November 14, 2003, and was placed in the Intellectually Impaired Sex Offender Treatment Program. Due to plaintiff's illiteracy, other individuals have helped him complete written MOSOP assignments.

According to MOSOP therapists, plaintiff had difficulty adjusting to the therapeutic community and describing his crime in detail without blaming his victim or changing the facts from one telling of the story to another. Plaintiff withheld information and agreed with any suggestions given to him in order to move discussions on to another topic. Although plaintiff did not appear to have problems understanding what was said in the group despite his reading and writing problems, he offered his disability as an explanation when he was caught being untruthful during treatment. Plaintiff was informed on multiple occasions by a MOSOP therapist

that he cannot use his medical problems as excuses for not remembering or understanding. He was told repeatedly to be honest about his crime.

Plaintiff requested audio tapes of the written materials for the program, and in response an MDOC employee told plaintiff that he would need to contact his therapist to obtain the tapes. Subsequently, plaintiff asked another inmate to write and deliver a letter on plaintiff's behalf requesting the tapes. Plaintiff did not follow up on the request or verify that it was received.

On January 20, 2004, plaintiff met with his treatment team, admitted to not being open and honest during treatment, was terminated from the program for that reason, and declined a second opportunity to complete the program. Plaintiff admits that, while he does not remember being told why he was terminated from MOSOP, he thinks that it was because he was not being open and honest. MOSOP staff informed plaintiff that if he refused the second opportunity, an extension of his conditional release date would be requested by defendant James F. LaBundy, the Chief of Sex Offender Services. Plaintiff's release date was subsequently extended after a hearing.

## Analysis

**A. ADA Claim**

Title II of the ADA prohibits public entities, such as state prisons, from discriminating against qualified persons with

disabilities in the provision or operation of public services, programs, or activities. 42 U.S.C. §§ 12131-12134; Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209 (1998). To establish a violation of Title II of the ADA, plaintiff must demonstrate that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." Randolph v. Rogers, 170 F.3d 850, 858 (8th Cir. 1999). "A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1); see also Randolph, 170 F.3d at 858 (requiring "'meaningful access' to programs and activities"). The regulations further require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); see also Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998). However, under the ADA, a reasonable accommodation is all that is required. Alexander v. Choate, 469 U.S. 287, 300 (1985).

Plaintiff's claim fails as to the third required element. Plaintiff was not terminated from MOSOP because of any disability,

5

but rather because he refused to be open and honest during his treatment--a requirement which he was informed of multiple times. Furthermore, plaintiff admitted to not telling the truth and was advised of the consequences of refusing a second opportunity to participate in MOSOP. Plaintiff's assertions to the contrary that he was terminated because of his learning disability are unsupported. Plaintiff admits that he had others help him with his written assignments in MOSOP--again evidencing that his disability did not bar his participation. Access to audio tapes, which plaintiff requests in his first amended complaint, would not have helped him participate openly and honestly in MOSOP. For the above reasons, plaintiff has failed to show that he was excluded from MOSOP due to disability discrimination.

Assuming *arguendo* that plaintiff established an ADA violation, defendant MDOC argues that Eleventh Amendment state sovereign immunity applies. The Eleventh Amendment guarantees that non-consenting states or their agencies, such as defendant MDOC, may not be sued by private individuals in federal court. U.S. Const. amend. XI; see also Thomas v. FAG Bearings Corp., 50 F.3d 502, 505-06 (8th Cir. 1995). Congress can abrogate this immunity pursuant to § 5 of the Fourteenth Amendment by enacting prophylactic legislation. Klingler v. Dir., Dep't of Revenue, Mo., 455 F.3d 888, 893 (8th Cir. 2006). In analyzing ADA Title II claims against a state agency, the Supreme Court suggests a claim-

by-claim analysis of whether Congress validly abrogated state sovereign immunity. United States v. Georgia, 126 S.Ct. 877, 882 (2006).

Determining whether Congress has validly abrogated immunity requires a finding that: (1) Congress has unequivocally expressed intent to abrogate immunity, and (2) Congress has acted pursuant to a valid grant of constitutional authority. Tennessee v. Lane, 541 U.S. 509, 517 (2004). With respect to the first requirement, the Court finds that Congress, in passing the ADA, "unequivocally expressed" its intent to abrogate Eleventh Amendment immunity. See Lane, 541 U.S. at 518; Klingler, 455 F.3d at 893 ("There is no question that, in enacting the ADA and authorizing its attendant regulations, Congress intended to abrogate state sovereign immunity."). Turning to the second required finding, the Court addresses whether Congress has acted pursuant to a valid exercise of power.

The Supreme Court has recently carved out two specific areas where Title II validly abrogates sovereign immunity, namely: (1) suits which implicate the accessibility of judicial services, Lane, 541 U.S. at 531, 533-34; and, more broadly, (2) suits which address conduct that is in itself unconstitutional, Georgia, 126 S.Ct. at 881.[3] Klinger, 455 F.3d at 893. This Court does not find

---

[3] Defendant MDOC's reliance on Bill M. ex rel. William M. v. Neb. Dep't of Health and Human Services Fin. and Support, 408 F.3d 1096, 1100 (8th Cir. 2005), for the proposition that the ADA only abrogates the Eleventh Amendment with respect to claims concerning

7

that terminating plaintiff from MOSOP constitutes unconstitutional conduct.[4]  As plaintiff has not established that defendant MDOC has interfered with a fundamental right or discriminated against a suspect class, a strict-scrutiny analysis concerning the state agency's actions is not warranted.  See Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457-58 (1988).  Unlike in Lane, which involved wheelchair-mobile paraplegics' complaints of a lack of reasonable access to courthouses, plaintiff's claim concerns a denial of access to MOSOP, which is not a fundamental right or liberty protected by the Fourteenth Amendment even if participation in MOSOP is a condition for parole consideration.[5]  The Court thus

---

access to courts is misplaced as the Supreme Court vacated and remanded Bill M. with instructions that it be reconsidered in light of Georgia.  United States v. Neb. Dep't of Health and Human Services Fin. and Support, 126 S.Ct. 1826 (2006).  Furthermore, the Eighth Circuit has noted that Alsbrook v. City of Maumelle, 184 F.3d 999, 1006 (8th Cir. 1999), upon which defendant MDOC also relies, may also no longer be good law in light of Georgia. Klingler, 455 F.3d at 892.

[4] Plaintiff seeks a declaratory judgment that defendant MDOC's actions violate the Fifth, Ninth, and Fourteenth Amendments, without offering support for this proposed finding.  Furthermore, plaintiff has not responded to defendant MDOC's motion to explain how the actions complained of otherwise violate the Constitution.

[5] With respect to ADA Title II claims for violations of the Fourteenth Amendment, the Supreme Court recommends that district courts make the following claim-by-claim determinations: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  Georgia, 126 S.Ct. at 882.  In this case, defendant MDOC's alleged conduct does not violate Title II, as discussed above, or the Fourteenth Amendment.

applies a rational-basis standard to the alleged disability discrimination.  See Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 735 (2003).  "Thus, in order to impugn the constitutionality of state discrimination against the disabled . . . , Congress must identify, not just the existence of . . . disability-based state decisions, but a 'widespread pattern' of irrational reliance on such criteria."  Hibbs, 538 U.S. at 735 (citation omitted).

Otherwise stated, for the abrogation clause of the ADA to be valid with respect to ADA claims concerning access to MOSOP, there must exist "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  City of Boerne v. Flores, 521 U.S. 507, 519-20 (1997).  In making this determination, the Court considers Title II as a whole. Klinger, 455 F.3d at 896.  In enacting Title II, Congress sought to enforce the Fourteenth Amendment Equal Protection Clause's command that "all persons similarly situated should be treated alike." Lane, 541 U.S. at 523 (citing Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)).  Patterns of unequal treatment in the administration of public services, programs, and activities, including those provided in the penal system, are documented in decisions of other courts, demonstrating a pattern of unconstitutional treatment in the administration of justice.  See Lane, 541 U.S. at 525 & n.11.  The Supreme Court found beyond peradventure that the inadequate provision of public services and

access to public facilities, including in the area of institutionalization, was an appropriate subject for prophylactic legislation. Id. at 529; see also Klinger, 455 F.3d at 896.

With respect to a challenge to Missouri's surcharge on handicap parking placards, the Eighth Circuit found that "rather than seeking to enforce the [C]onstitution's guarantee against irrational discrimination based on disability, Congress was seeking to redefine the scope of protection offered by the Constitution." Id. at 896-97. As noted in Lane, "[w]hile Congress must have a wide berth in devising appropriate remedial and preventative measures for unconstitutional actions [under § 5 of the Fourteenth Amendment], those measures may not work a 'substantive change in the governing law.'" Lane, 541 U.S. at 520 (citing Boerne, 521 U.S. at 519). Simply stated, Congress cannot redefine a state's legal obligations. See Hibbs, 538 U.S. at 735. With respect to the claims under the ADA in this case, the Court finds that Congress was redefining a right not enforcing it. Thus, Title II did not validly abrogate Missouri's immunity in the context of this challenge to plaintiff's access to MOSOP in light of plaintiff's learning disability. See Klinger, 455 F.3d at 897 (citing Boerne, 521 U.S. at 519). Consequently, even if plaintiff could succeed on his ADA claim, defendant MDOC retains its immunity against plaintiff's claims of denial of access to MOSOP under Title II of the ADA.

**B. Rehabilitation Act Claim**

Plaintiff's second count states a claim pursuant to § 504 of the Rehabilitation Act, which provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). Aside from the federal funding requirement, the Rehabilitation Act and the ADA are similar in substance and "cases interpreting either are applicable and interchangeable." Gorman, 152 F.3d at 912 (citation omitted). "To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) he was discriminated against based on his disability." Id. at 911. As discussed above with respect to the ADA claim, plaintiff has failed to show that he was denied the benefits of MOSOP or discriminated against based on his disability. Plaintiff's rehabilitation claim thus fails.

Accordingly,

11

**IT IS HEREBY ORDERED** that defendant Missouri Department of Corrections' unopposed motion for summary judgment [Doc. #48] is granted.

Dated this ___21st___ day of March, 2007.

                                              /s/ Donald J. Stohr
                                              UNITED STATES DISTRICT JUDGE